IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IL VENTURES, LLC – A KETTLEBELL KING SERIES and CHAD PRICE, PRICE DIGITAL CONSULTANTS, LLC, JAY PERKINS and NEHEMIAH HEARD, Individuals, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 1:23-cv-00749-ML |
| FACTORY 14 UK ACQUISITION VI, LTD., FACTORY 14 UK ACQUISITION VII, LTD. and RAZOR GROUP GMBH, | § § § § § | |
| Defendants. | § | |

_____

CONSULTANT PLAINTIFFS' REPLY TO THE RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONSULTING AGREEMENT
_____

CHAD PRICE ("Price"), PRICE DIGITAL CONSULTANTS, LLC ("Digital"), and JAY PERKINS ("Perkins") (collectively, "Consultant Plaintiffs") file their Reply to the Response [ECF 61] (the "Response") to Consultant Plaintiffs' Motion for Partial Summary Judgment (the "Motion") [ECF 59], and respectfully show the Court as follows:

I. **REPLY**

A.  **Consultant Plaintiff Digital is Entitled to Attorney's Fees and Costs against Razor.**

1. The undisputed facts show that Defendant Razor made an agreement to reimburse Consultant Plaintiff Digital for its Berlin Expenses via email.[1] Defendant Razor does not dispute

---

[1] *See* **Exhibit 9, APPX 239**, the Navarro Depo. at 10:12-12:14; *see* **Exhibit 7, APPX 206-207**, the Price Affidavit at ¶¶7-8 and **Exhibit 7-9.**

its liability for its breach of this agreement under §38.001, *et seq*. of the Tex. Civ. Prac. & Rem. Code ("Chapter 38").[2] Assuming *arguendo* Defendants' asserted position that Defendant Razor is not a party to the Consulting Agreement or the APA, then the provisions of such agreements upon which Defendants rely to evade attorney's fees would not apply.[3] Additionally, the Consulting Agreement does not contain any language requiring Defendant Razor to reimburse the Berlin Expenses to Consultant Plaintiff Digital specifically because the reimbursement agreement was based upon the emails entered into evidence. As such, the payment of the Berlin Expenses was a separate agreement, enforceable regardless of whether or not Defendant Razor is a party to the Consulting Agreement or the APA.[4]

2.      In addition, for the reasons set forth below, the argument that "expenses" includes attorney's fees is not well-taken.[5] Accordingly, Consultant Plaintiff Digital is entitled to recover not only the Berlin Expenses from Defendant Razor, but also its attorney's fees and costs.

**B.      Factory 14 VI and Razor are Both Liable under the APA and Consulting Agreements.**

3.      Despite generic citations in the Response, Defendants have not identified any evidence in the record supporting their assertion that Factory 14 VI was removed or released from its liabilities and obligations under the APA and the Consulting Agreements.[6] Additionally, the definition of the Company in the Consulting Agreements not only includes affiliated entities but also

---

[2]*See generally*, the Response.

[3]*See* the Response at pp. 4-8.

[4]*See* **Exhibit 9, APPX 239**, the Navarro Depo. at 10:12-12:14;  *see* **Exhibit 7, APPX 206-207**, the Price Affidavit at ¶¶7-8 and **Exhibit 7-9.**

[5]*See* the Reply at Section I(C), *infra*.

[6]*See generally*, the Response.

permits the transfer of obligations between Defendants.[7] The undisputed emails entered into evidence clearly support that Defendant Razor engaged, facilitated and undertook the obligations regarding payments arising pursuant to the Consulting Agreements.[8] Further, the admission by Defendant Razor's corporate representative.[9] Furthermore, the Consulting Plaintiffs object to Factory 14 VI's attempts to argue release, ratification or any other affirmative defense that has not been pleaded.[10] Accordingly, neither Factory 14 VI nor Razor have established a legal basis or the existence of a fact issue to support their assertion that they are not liable for breaches of the APA or the Consulting Agreements.

**C.    The APA Does Not Bar Attorney's Fees.**

   ***1.    Section 8.02 Does Not Bar the Recovery of Attorney's Fees under Chapter 38.[11]***

4.     Defendants base their initial argument as to the inability to collect attorney's fees for breach of the APA upon the single, unsupported assertion that "attorney's fees and costs fall within the scope of the 'expenses' contemplated under Section 8.02 of the APA."[12] However, except for the definition of "Losses" in Article V and as discussed in Article VII (Indemnification), the APA

---

[7] *See* **Exhibit 2**, **APPX 147**, the Perkins Consulting Agreement at § 1.6; *see* **Exhibit 3**, **APPX 157**, the Digital Consulting Agreement at APA at §1.6.

[8] *See* **Exhibits 6-1** through **6-3**, **APPX 188-199**, Razor Emails; *see* **Exhibits 7-2, 7-4,7-7,** and **7-8, APPX 212, 216, 222-227, 228-231,** Razor Emails; *See* **Exhibit 9, APPX 244**, the Navarro Depo at 91:14-92:17; *see* **Exhibit 9-1 through 9-3, APPX 255**, **266, 272**, UK Companies House Filings of Factory 14 VII UK Acquisitions, Ltd..

[9] *See* the Motion (Unredacted Version), at ¶¶ 34-35 and fn. 45-46.

[10] ECF 47 at pp. 27-29; ECF 48 at pp. 29-31.

[11] Section 8.02 states that, "*[e]xcept as otherwise specifically provided* in this Agreement, each party shall be responsible for the expenses it may incur..." *See* **Exhibit 1, APPX 034-035**, the APA at §8.02 (emphasis added). Accordingly, Article VII would still permit the recovery of attorney's fees.

[12] *See* the Response at p. 5.

is silent as to attorney's fees.[13] Ostensibly, the complete lack of case law to support Defendants' assertion should suffice to reject this argument and allow Chapter 38 to govern Consulting Plaintiffs' request for attorney's fees for breach of contract.

### a. Attorney's Fees are Neither Costs nor Expenses.

5. Defendants' Response uses the words "costs" and "expenses" interchangeably. Specifically, Defendants state that, "[s]ince the parties expressly agreed to be responsible for their own costs related to enforcement of the relevant agreements, Chapter 38 of the Texas Civil Practice and Remedies Code does not apply."[14] As set forth below, though the terms "costs" and "expenses" are interchangeable, the term "attorney's fees" does not equate to "costs" or "expenses."

### b. Texas Courts have Rejected Attorney's Fees as Costs or Expenses.

6. The Texas Supreme Court has confirmed that "costs" does not include attorney's fees.[15] In *Nalle Plastics,* the Court reviewed various statutes, including Tex. Civ. Prac. & Rem. Code §§38.001, 31.0007 and 12.006, and noted that "[i]f all of these 'costs' included attorney's fees, there would be little left of the American Rule."[16] The Texas Supreme Court then held that attorney's fees were not included within the definition of costs for purposes of setting a supersedeas bond.

7. Texas courts have similarly not been receptive to Defendants' characterization of

---

[13] *See generally,* **Exhibit 1**, **APPX 001-145**, the APA.

[14] *See the Response at p. 6, ¶21.*

[15] *In re Nalle Plastics Family Ltd. P'shp*, 406 S.W.3d 168, 175-176 (Tex. 2013).

[16] *Id.,* at 176.

attorney's fees as expenses. In *Wiese v. Pro Am Services, Inc.*,[17] the plaintiff argued that it was entitled to recover attorney's fees as expenses in its conversion action. In rejecting the argument, the Houston court of appeals acknowledged that the expenses incurred in regaining possession are recoverable, but clearly stated that "nowhere in the opinion does the [*Donnelly*] court suggest that attorney's fees may be recovered as expenses incurred while regaining possession of personal property."[18]

        **c.**        **Florida Makes an Analogous Decision that Attorney's Fees are Not Expenses.**

8.     In a most analogous case, the Florida court of appeals,[19] stated:

> Under Florida law, "[t]he term `costs' is not generally construed to include attorney's fees absent an express contractual provision that defines expenses to include fees." (*initial citations omitted*); *Attorney's Title Ins. Fund, Inc. v. Landa-Posada*, 984 So.2d 641, 643 (Fla. 3d DCA 2008) ("Costs recovered by a litigant do not include attorney's fees."); *Price v. Tyler*, 890 So.2d 246, 253 (Fla. 2004) (construing the term "costs" in section 57.041, Florida Statutes (2001), as not including attorney's fees). Similarly, "expenses" is a vague monetary term similar to "costs"; a policy of strict construction precludes the term "expenses" from being stretched to include attorney's fees. (*citation omitted*) ("[L]ike the term `costs,' the term `expenses' is not generally construed to include attorney's fees absent an express contractual provision that defines expenses to include fees.").[20]

The subject provision in *Air Turbine* stated that, "[i]n the event of dispute, the Party prevailing in

---

[17]317 S.W.3d 857, 861. (Tex.App.–Houston [14th Dist.] 2010, no pet.).

[18]*Id*., citing *Donnelly v. Young,* 471 S.W.2d 888, 891 (Tex. Civ. App.–Fort Worth 1971, writ ref'd n.r.e.).

[19]*Air Turbine Technology v. Quarles & Brady*, 165 So. 3d 816, 820 (Fla. 4th DCA 2015) (affirming Florida's adherence to the American Rule just as Texas').

[20]*Id*. at 821.

any legal action arising out this Agreement shall be entitled to receive its legal costs and expenses."[21] The court stated that "strict construction of the 'legal costs and expenses' provision" precluded any award of attorney's fees "because fees are not even mentioned in the paragraph."[22]

9. Applying the foregoing to the APA, it is clear that when the parties intended for "expenses" to include attorney's fees, the APA so stated.[23] Clearly, section 8.02 of the APA does not expressly state that expenses includes attorney's fees;[24] therefore, Section 8.02 does not bar the recovery of attorney's fees against Defendants under Chapter 38.

### d. The APA Clearly References Attorney's Fees When Intended.

10. The APA clearly states when it intended to reference attorney's fees. For example. in the definition of "Losses," the APA equates the term "expenses" with "costs" as the two are referenced together as "costs and expenses."[25] Furthermore, the definition also expressly states that "Losses" includes "court fees and attorney's fees."[26] Moreover, the APA also clearly states when the term expenses includes attorney's fees. For example, Section 5.02(a) of the APA states that, "[t]he party requesting access to any such books and records or other information shall bear all of the out of pocket costs and expenses (including attorney's fees but excluding reimbursement for

---

[21] *Id.* at 819.

[22] *Id.* at 821.

[23] *See* **Exhibit 1, APPX 012, 015, 028, 029-30**, the APA §§2.03(b)(xiv), 2.08, 5.02(c), and 5.07 (not expressly including attorney's fees).

[24] *See* **Exhibit 1, APPX 034-035**, the APA at §8.02.

[25] *See* **Exhibit 1, APPX 006-007**, the APA at §1.02 ("Losses").

[26] *See* **Exhibit 1, APPX 006-007**, the APA at §1.02 ("Losses").

salaries and employee benefits) reasonably incurred..."[27] In comparison, when used in other sections of the APA, the term "expenses" does not contain a specific inclusion of attorney's fees.[28]

11.  Consistent with the ruling out of Florida, the term "expenses" cannot be stretched to include attorney's fees.[29] Thus, Defendants' argument will prevail only when the APA expressly states that the term "expenses" includes attorney's fees; however, that is not what Section 8.02 states.[30] Defendants' argument fails precisely because Section 8.02 of the APA references only "expenses" and is silent as to attorney's fees.[31] The two cases relied upon by Defendants in support of Section 8.02 superceding Chapter 38 are inapplicable.[32]

### 2.  *Article VII of the APA Authorizes Attorney's Fees and Costs for Direct Claims.*

12.  Though it is generally correct that indemnity provisions are not enforceable as to claims between parties, contractual agreements may provide for indemnification provisions to apply to claims between parties.  The United States District Court for the Southern District of Texas has clearly explained the law in Texas:[33]

---

[27] *See* **Exhibit 1, APPX 028**, the APA at §5.02(a).

[28] *See* **Exhibit 1, APPX 012, 015, 028, 029-30**, the APA §§2.03(b)(xiv), 2.08, 5.02(c), and 5.07 (not expressly including attorney's fees).

[29] *Air Turbine Technology*, 165 So. 3d at 820.

[30] *See* **Exhibit 1, APPX 034-035**, the APA at §8.02.

[31] *See* **Exhibit 1, APPX 034-035**, the APA at §8.02.

[32] *See* the Response at p. 6, ¶21.

[33] *BP Products N. Am. Inc. v. J.V. Indus. Companies, LTD.*, CIVA H-07-2369, 2010 WL 1610114, at *4-5 (S.D. Tex. Apr. 21, 2010)

> An indemnity provision is construed as any other contract. *Safeco Ins. Co. v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App.-Dallas 1992, writ denied). "An indemnity agreement is a promise by the indemnitor to safeguard or hold the indemnitee harmless against existing or future loss or liability." *Kellogg Brown & Root Intern., Inc. v. Altanmia Comm. Mktg. Co.*, W.L.L., 2008 WL 5114962, *20 (S.D. Tex. Dec. 3, 2008) (Rosenthal, J.)... Generally, an indemnity provision "does not apply to claims between the parties to the agreement but obligates the indemnitor to protect the indemnitee against claims brought by third parties." *Id.* (citing *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 63 (Tex. App.-San Antonio 2005, pet. denied)); *see also Derr Constr. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex. App.-Houston [14th Dist.] 1992, no writ). Nonetheless, indemnity agreements can be written to require the parties to "indemnify each other against claims they later assert against each other." *Ganske v. Spence*, 129 S.W.3d 701, 708 (Tex. App.-Waco 2004, no pet.); see also *Kellogg*, 2008 WL 5114962 at *20; *Radiant Sys., Inc. v. American Scheduling Inc.*, 2006 WL 2583266, *3 (N.D. Tex. Sept. 7, 2006). In *Radiant*, for example, the indemnity contract required Radiant to indemnify American Scheduling Inc. ("ASI") for any losses resulting from "the breach or falsity of any covenant or agreement made by [Radiant] in this Agreement." *Id.* The court held that this language clearly contemplated indemnity for a claim by ASI against Radiant because it specifically covered losses caused by a breach or falsity by Radiant.[34]

13. The Southern District then found that the indemnification provision it was reviewing included direct claims between the parties:

> Similarly, in this case the indemnity provision specifically provides for indemnity for losses caused by "damage to, or loss or destruction of any property (including without limitation, the Work and the property of [J.V. and BP]." Contract, §27.01. BP is the most likely, and perhaps the only, party to assert a claim for losses caused by damage to BP's property. The indemnity provision in §27.01 is materially different from the indemnity provision at issue in Kellogg. In that case, the indemnity agreement simply provided for indemnity for damage "to any property" generally and without mentioning specifically the property of a party to the contract. In the case before this Court,

---

[34]*Id.*

however, the provision specifically covers losses caused by damages to BP's property. The clear language in the contract establishes that it was written to require J.V. to indemnify BP for BP's own claims for losses caused by damage to BP's property. As a result, the indemnity provision in §27.01 may be asserted by BP in this case.[35]

14. The United States District Court for the Western District of Texas has also affirmed *Radiant*,[36] distinguishing the indemnification provision in *Radiant* from the one it was reviewing because the provision in *Radiant* explicitly identified claims brought by the indemnitee against the indemnitor, and cited *Radiant* for "finding that the indemnification clause applied to losses, including attorney's fee resulting from any breach of contract by Radiant, the indemnitor."[37]

15. Applying the law to this case, the indemnity provision in *Radiant* is nearly identical to Section 7.03 of the APA.[38] Just as in *Radiant*, the indemnity provision in the APA requires indemnification *by the Buyer* of any and all Losses (expressly defined to include attorney's fees and costs in the APA), from three specific categories: a) any misrepresentation or breach of warranty under Article IV (a "Buyer Warranty Breach"); b) any default by Buyer in the performance or observance of any of its covenants or agreements under this Agreement; and c) any Specifically Assumed Liabilities.[39] Further, just as in *BP*, the language of Section 7.03 was written to indemnify Plaintiffs from Defendants' breaches of their covenants, warranties, and defaults under the APA (inclusive of the Ancillary Agreements). Section 7.03 was not written generically, as "any and all

---

[35]*Id.*

[36]*Halprin v. FDIC*, No. 5:13-CV-1042-RP (W.D. Tex. Jan. 14, 2019).

[37]*Id.*

[38]*Radiant Sys., Inc. v. American Scheduling Inc.*, 2006 WL 2583266, *3 (N.D. Tex. Sept. 7, 2006).

[39]*See* **Exhibit 1, APPX 032**, the APA at §7.03 (emphasis added).

claims" language, but specifically identifies Plaintiffs and specifically includes attorney's fees and court fees.[40]

16.     Moreover, reading Article VII in its entirety, it clearly allows both for direct claims between the parties and for indemnification for third party claims.[41] Both Section 7.02 and Section 7.03 directly refer to the representations and warranties made between the parties, which language is almost identical to that found in *Radiant;* consistent with the theory expressed in *BP,* the harmed party for such claims would likely be only the parties to the APA and not a third party.[42] Notably, Section 7.04 is conditional, and applies only in the event of third party claim.[43] Indeed, if only third party indemnification claims were intended by the APA, section 7.04 would be superfluous. Finally, Section 7.07 makes the indemnification provision the exclusive remedy between the parties, "each against another," except for the certain circumstances listed.[44] Based upon Article VII as a whole, it is readily apparent that direct claims between the parties are intended to be indemnified. Defendants' argument to the contrary fails both as a matter of fact and as a matter of law.

## II. PRAYER FOR RELIEF

WHEREFORE, Consultant Plaintiffs respectfully request that the Motion be, in all things, GRANTED, and such other and further relief at law or in equity to which the Consultant Plaintiffs may show themselves justly entitled.

---

[40] *See* **Exhibit 1, APPX 032**, the APA at §7.03.

[41] *See* **Exhibit 1, APPX 032-034**, the APA at Article VII.

[42] *See* **Exhibit 1, APPX 032**, the APA at §7.03.

[43] *See* **Exhibit 1, APPX 033**, the APA at §7.04.

[44] *See* **Exhibit 1, APPX 034**, the APA at §7.07.

Respectfully submitted,[45]

SHEILS WINNUBST, PC

By:   */s/ Latrice E. Andrews*
      Mark D. Winnubst
      State Bar No. 21781200
      Latrice E. Andrews
      State Bar No. 24063984

1100 Atrium II
1701 N. Collins Boulevard
Richardson, Texas 75080
Telephone: 972-644-8181
Facsimile: 972-644-8180
Email: mark@sheilswinnubst.com
E-mail: latrice@sheilswinnubst.com

ATTORNEYS FOR CONSULTANT PLAINTIFFS

## CERTIFICATE OF SERVICE

On the 9th day of May, 2025, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and parties of record electronically or by another means authorized through Federal Rule of Civil Procedure 5(b)(2) and the Local Rules.

   */s/ Latrice E. Andrews*
   Latrice E. Andrews

---

[45] According to the Local Rules, the signature block and certificate of service are not included in the length and therefore the Reply Brief complies with the length limitations of a reply brief, 10 pages, as set forth in the Scheduling Order.