IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IL VENTURES, LLC – A KETTLEBELL KING SERIES and CHAD PRICE, JAY PERKINS and NEHEMIAH HEARD, Individuals, | § § § § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Case No. 1:23-cv-00749-DII |
| | § | |
| FACTORY 14 UK ACQUISITION VI, LTD., FACTORY 14 UK ACQUISITION VII, LTD., FACTORY 14 UK S.A.R.L. and RAZOR GROUP GMBH, | § § § § § | |
| | § | |
| Defendants. | § | |

_____

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON EARN-OUT RELATED BREACHES OF THE APA AND BRIEF IN SUPPORT
_____

IL VENTURES, LLC – KETTLEBELL KING SERIES ("Plaintiff Seller") file this, its

Motion for Partial Summary Judgment on Earn-Out Related Breaches and Brief in Support (the

"Motion"), and respectfully shows the Court as follows:

## I. SUMMARY

1.      No genuine issues of material fact exist as to essential elements of certain claims

alleged by Plaintiff Seller, thus making summary judgment proper. Specifically, Plaintiff Seller seeks

summary judgment against Defendant Factory 14 UK Acquisition VII, Ltd. ("Factory 14 VII") and

Defendant Razor Group GmbH ("Razor") for breaching the obligations under the APA to: (a)

provide Plaintiff Seller access to the books and records; (b) timely provide and properly calculate

the Earn Out Calculations; and (c) pay Plaintiff Seller the Earn Out Payments it is due. Notably,

though a fact issue may exist as to the amount of the Earn Out Payments due, there is no question that Earn Out Payments are due to Plaintiff Seller and have not been paid to date.[1]

## II. PROCEDURAL BACKGROUND

2.     Plaintiff KBK filed its Amended Complaint [ECF No. 21] on January 19, 2024 (the "Complaint").  The Complaint alleged, among other things, that Plaintiff KBK is entitled to recover for breach of contract claims against Defendants.[2]  Defendants filed their respective Answers to the Complaint [ECF No.'s 47 and 48]  on August 21, 2024 (the "Answers").    The discovery period closes on July 31, 2025.[3]  The deadline to file dispositive motions is on or before June 30, 2025; therefore, this Motion and Brief are timely filed.[4]  This case is set for trial on October 16, 2025.[5]

## III.  LEGAL STANDARD

3.     Under Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is proper if the movant shows that no genuine dispute as to any material fact exists and that the movant is entitled to judgment as a matter of law.[6]   A factual issue is material if its resolution could affect the outcome of the case.[7]   The district court is required to view all facts and draw all reasonable

---

[1]To the extent other named Defendants are liable for these claims under vicarious liability theories or directly as a party, such claims are reserved for trial.  For purposes of clarity, Plaintiff Seller intends to prove up the civil conspiracy claims and/or alter ego theories to hold the other named Defendants liable at trial.  As such claims involve the resolution of genuine issues of material fact, they are not proper for summary judgment.

[2]*See generally*, the Amended Complaint.

[3]*See* the Text Order granting ECF 63, entered on May 19, 2025, extending the discovery deadline.

[4]First Amended Scheduling Order [Doc. 53],  para. 8.

[5]First Amended Scheduling Order [Doc. 53],  para. 11.

[6]Fed. R. Civ. P. 56(a).

[7]*Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F. 3d 233, 235 (5th Cir. 2003).

inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party.[8] Unsubstantiated assertions, improbable inferences, and unsupported speculation are insufficient to defeat a motion for summary judgment.[9]

## IV.  SUMMARY JUDGMENT EVIDENCE[10]

4.    Plaintiff Seller's Motion is supported by the pleadings on file with the Court at the time of the hearing, and the documents filed simultaneously herewith in the Appendix in Support of Plaintiff's Motion for Partial Summary Judgment (the "Appendix"), all of which are incorporated by reference as if fully set forth herein.  Plaintiff Seller hereby places all parties hereto on notice of its  intent to use the evidence in the Appendix and documents in the court's file as summary judgment proof, some or all of which may not currently be on file with the court.

## III. BACKGROUND FACTS

### A.    The Asset Purchase Agreement (the "APA").

5.    The APA was originally executed as between Defendant Factory 14 VI UK Acquisitions Ltd., as "Buyer," IL Ventures, LLC as "Seller" and Chadwick Price, Jay Perkins and Nehemiah Heard as "Founders."[11] The Closing Date of the APA was November 1, 2021.[12] By an amendment to the APA, Factory 14 VII UK Acquisitions Ltd. ("Factory 14 VII") became a party

---

[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[9]*Brown v. City of Houston*, 337 F. 3d 539, 54 (5th Cir. 2003).

[10]Counsel for Defendants agreed to the unredacted filing of the Motion provided that the Appendix was filed under seal at the June 26, 2025, hearing.

[11]*See* **Exhibit 1, APPX 002 and 003-004,** the APA Preamble at A-C, p. 2; *see* also Section 1.02 at pp. 3,4.

[12]*See* **Exhibit 1, APPX 014**, the APA at § 2.06, *see also* **Exhibit 9, APPX 213**, the Tran Depo at 44: 4-45:8.

to the APA.[13]  After the APA closed, Factory 14 VII was the exclusive owner of the Kettlebell Kings brand, intellectual property, websites and website domains, contracts, sponsorships, and products (the "KBK Assets"); thereafter, Factory 14 VII was used interchangeably with Kettlebell Kings or KBK.[14]  The website located at www.kettlebellkings.com (the "KBK Website") was part of the KBK Assets and operated as an online marketplace (the "KBK Marketplace").[15]

**B.    Revenue from Revenue Sharing Agreements is Not Incorporated in the EOCs.**

6.    Cross-selling and cross-promoting of other brands on the KBK Website and the KBK Marketplace was a key part of the ongoing business of Plaintiff Seller prior to the execution of the APA and such revenue sharing was included as part of the ongoing revenue stream for the Kettlebell Kings brand.[16]  Defendant Factory 14 judicially admits that it has not paid or attributed any portion of the revenue sharing from other brands derived from sales through the KBK Website or the KBK Marketplace to Plaintiff Seller.[17]  During the deposition of Michelle Tran, as a corporate representative of Defendant Razor designated to testify regarding the Earn Out Calculations, Ms. Tran admitted that she was not aware of any revenue sharing agreements incorporated into the Earn Out Calculations, not even the revenue sharing agreement expressly

---

[13]*See* **Exhibit 2, APPX 151-152,** [ECF 67-3], the APA Amendment.

[14]*See* **Exhibit 4, APPX 157-158**, Razor Letter; *see* **Exhibit 6, APPX 165***,* the Price Decl. at ¶2.

[15]*See* **Exhibit 1, APPX 060,** the APA at Appendix 1 to the APA.

[16]*See* **Exhibit 6**, the Price Decl. at ¶5; *see* **Exhibit 15-1, APPX 326-330,** the Living.Fit Revenue Sharing Agreement, as amended by the First Amendment; see **Exhibit 1, APPX 091 and 92,**  the APA at Appendix 1 §§2.01(c) and 2.02 (regarding Zoo Bells).

[17]*See* [ECF 48] at p. 12, ¶¶ 42.

referenced in the APA.[18] She also testified that the net revenue in the July 2024 Memo Year 1 and 2 EOC did not include revenue from non-KBK products sold on the KBK Website/KBK Marketplace.[19]

### 1. Living.Fit

7.      For example, one of the assets purchased and assumed by Factory 14 VII through the APA included the amended Revenue Sharing Agreement between Living.Fit and IL Ventures, LLC (the "Living.Fit Revenue Sharing Agreement").[20] Pursuant to the Living.Fit Revenue Sharing Agreement, Living.Fit sold products on the KBK Website in exchange for 15% of revenue from such sales. Living.Fit earned $79,991.17 in gross revenue from sales of its products on the KBK Website from November 1, 2021, through October 31, 2022.[21] Therefore, for Year 1 of the APA, the 15% of gross revenue from the Living.Fit Revenue Sharing Agreement that should have been attributed to Factory 14 VII was $11,998.68.[22] Additionally, from November 1, 2022, through January 31, 2023, Living.Fit received $13,882.43 in gross revenue from sales of its products on the KBK Website, 15% of which should have been included in the gross revenue of Factory 14 VII for

---

[18]*See* **Exhibit 9, APPX 222,** the Tran Depo. at 78:2-22 **APPX 224-225,** the Tran Depo. at 89:24-14, **APPX 223-224, 85:24-86:2** and **APPX 251-252,** 57:16-58:9.

[19]*See* **Exhibit 9, APPX 222,** the Tran Depo. at 78:14-81:4.

[20]*See generally,* **Exhibit 1, APPX 091,** the APA at Appendix 1 §2.01(c)(3); *see generally,* **Exhibit 1-1, APPX 146-150,** the Living.Fit Revenue Sharing Agreement.; *see* **Exhibit 15, APPX 324,** the Perkins Decl. at ¶3.

[21]*See* **Exhibit 15**, **APPX 324-325,** the Perkins Decl. at ¶4; *see* **Exhibit 15-2, APPX 331-401,** Report of Sales of Living.Fit from KBK Website.

[22]*See* **Exhibit 15**, **APPX 324-325,** the Perkins Decl. at ¶4; *see* **Exhibit 15-2, APPX 331-401,** Report of Sales of Living.Fit from KBK Website.

purposes of the Earn Out Calculations.[23]

8.      Defendants failed to provide Living.Fit any additional accounting information regarding its sales on the KBK Website after January 31, 2023.[24] On March 8, 2023, Living.Fit sent a demand letter seeking to reconcile the accounting of the revenue from the KBK Website because its portion of revenues had also been improperly withheld by Defendants. The demand letter further proposed an early termination of the Living.Fit Revenue Sharing Agreement by requesting that Defendants sign an early termination agreement.[25]  Despite not returning the signed agreed early termination agreement, Defendants Factory 14 VII and Razor unilaterally terminated selling the Living.Fit products on the KBK Website/KBK Marketplace on or about April 20, 2023.[26]

### 2.      *Razor-Owned Revenue Sharing Brands.*

9.      In or about January or February of 2022, Defendants commenced a pilot program to expand the KBK Website/KBK Marketplace in order to determine the potential profitability and scaling of such expansion, initially using the TribeWOD brand.[27]  Pursuant to the terms of the pilot program, Plaintiff Seller would receive 15% of the gross revenue from sales of the TribeWOD

---

[23]*See* **Exhibit 15**, **APPX 325,** the Perkins Decl. at ¶5; *see* **Exhibit 15-2, APPX 331-401,** Report of Sales of Living.Fit from KBK Website.

[24]*See* **Exhibit 15**, **APPX 325,** the Perkins Decl. at ¶5; *see* **Exhibit 15-2, APPX 331-401,** Report of Sales of Living.Fit from KBK Website.

[25]*See* **Exhibit 15**, **APPX 325,** the Perkins Decl. at ¶5-6; *see* **Exhibit 15-3, APPX 402-403,** Demand Letter from Living.Fit to Defendants.

[26]*See* **Exhibit 15**, **APPX 325,** the Perkins Decl. at ¶5-6; *see* **Exhibit 15-3, APPX 402-403,** Demand Letter from Living.Fit to Defendants.

[27]*See* **Exhibit 6-2, APPX 183-196,** the Email Thread Regarding Revenue Sharing Terms.

product on the KBK Website/KBK Marketplace, as well as 50% of the TribeWOD EBITDA.[28]

10.     The integration of the TribeWOD products into the KBK Website/KBK Marketplace was successful.[29] Thereafter, the subsequent phase of integrating additional brands to be cross-sold on the KBK Website/KBK Marketplace proceeded under similar terms.[30] Brands owned by Razor Group and cross-sold on the KBK Website/KBK Marketplace post-closing include PowerX, TribeWOD, Gym Keg and Hydrate (the "Razor Revenue Sharing Brands").[31]

11.     Pursuant to the parties' representations, understanding and agreements, 15% of the revenue derived from the Razor Revenue Sharing Brands being sold on the KBK Website/KBK Marketplace must be added to the Year 1, Year 2, and Year 3 gross revenue of Kettlebell Kings/Factory 14 VII.[32] Defendant Factory 14 S.a.r.l. sent monthly reporting packages providing financial information on an asset-based level to its lender, Victory Park Capital Advisors, LLC ("VPC"), which include specific gross revenue information related to the Kettlebell Kings brand

---

[28] *See* **Exhibit 6**, the Price Decl. at ¶6; *see* **Exhibit 6-1, APPX 182,** Screenshots of Kettlebell Kings Website and Brands Sold after APA Closing; *see* **Exhibit 6-2, APPX 183-196,** Email thread Regarding Revenue Sharing Terms.

[29] *See* **Exhibit 6**, the Price Decl. at ¶6; *see* **Exhibit 6-1, APPX182,** Screenshots of Kettlebell Kings Website and Brands Sold after APA Closing; *see* **Exhibit 6-2, APPX183-197,** Email thread Regarding Revenue Sharing Terms.

[30] *See* **Exhibit 6**, the Price Decl. at ¶6; *see* **Exhibit 6-1, APPX182,** Screenshots of Kettlebell Kings Website and Brands Sold after APA Closing; *see* **Exhibit 6-2, APPX183-197,** Email thread Regarding Revenue Sharing Terms.

[31] *See* **Exhibit 6**, the Price Decl. at ¶6; *see* **Exhibit 6-1, APPX182,** Screenshots of Kettlebell Kings Website and Brands Sold after APA Closing; *see* **Exhibit 6-2, APPX183-197,** Email thread Regarding Revenue Sharing Terms.

[32] *See* **Exhibit 6**, the Price Decl. at ¶6; *see* **Exhibit 6-1, APPX 182,** Screenshots of Kettlebell Kings Website and Brands Sold after APA Closing; *see* **Exhibit 6-2, APPX 183-196,** Email thread Regarding Revenue Sharing Terms.

operated under Factory 14 VII.[33]  Defendant Razor also made similar reports and according to the gross revenue reported by Razor to VPC, the gross revenue for the Razor Revenue Sharing Brands during the period of the APA are as follows:[34]

| Revenue Sharing Brand | Year 1 of APA ($/£) | Year 2 of APA  ($/£) |
|---|---|---|
| TribeWOD | $998,479.70 (£1,258,084.37) | $1,727,404.69/£2,124,706.53 |
| PowerX | $5,366,037.70£6761206.24) | $4,820,806.33/£5929,591.78 |
| The Gym Keg | $820,173.91 (£1033,419.12) | $804,882.13/£990,005.02 |
| Hydrate | $2,629,774.23 (£3,313,515.53) | $3,489,440.95/£4,292,011.14 |
| **Total Revenue** | **$9,814,464.50/£12,366,225.27** | **$10,842,532.10/£13,336,314.48** |
| **15% of Revenue to KBK** | **$1,472,167.67/£1,854,933.79** | **$1,626,380.00/£2,000,447.17** |

## C.    Razor is a "Buyer" for Purposes of the Earn Out Calculation.

12.    For purposes of calculating Year 1, Year 2, and Year 3 EBITDA, the APA defines Buyer to include "any successor or assign (whether direct or indirect by purchase, merger, consolidation, or otherwise) to all or substantially all of the business or assets of buyer."[35] On May 4, 2022, Defendant Razor acquired by indirect purchase, merger, or otherwise, all or substantially all of the business of Factory 14 VII, per the Stock Transfer Agreement.[36]  In May, 2022, Defendant Razor Group represented that it was undertaking *all* contractual obligations of Factory 14.[37]

---

[33] *See* **Exhibit 5**, **APPX 169-176**, F14 Jan. 2022 VPC Reporting Package.

[34] *See* **Exhibit 11-1, APPX 300,** Razor Jan. 2024 VPC Reporting Package.

[35] *See* **Exhibit 1, APPX 009,** the APA at § 1.02, at p. 9.

[36] *See* **Exhibit 16, APPX 404-507,** the Stock Transfer Agreement [ECF 67-4].

[37] *See* **Exhibit 3, APPX 153,** the Razor Letter dated May 20, 2022 (PLA977).

Defendant Razor held itself out to third parties as the owner of Kettlebell Kings.[38]

**D.    Breaches of the Requirement to Provide Access to the Financial Statements, Books and Records, and Certifications.**

13.    Section 5.02 of the APA requires that Seller be given access to the books and records of the Buyer.[39]  Section 2.04 of the APA requires that in conjunction with the calculations of the Earn-Out Payment Calculations, the Buyer was to deliver its "financial statements covering the entire year in question, which financial statements shall: (A) have been prepared in accordance with past business practices in effect from time to time, applied on a consistent basis throughout the period involved; (B) fairly present the financial condition of the business of Buyer as of the respective dates they were prepared and the results of the operations of the Business for the periods indicated; and (C) shall be accompanied by a written statement from Buyer certifying the matters stated in the above clauses (A) and (B).   The Earn Out Payment Calculations shall be prepared in accordance with Exhibit 3a of Appendix 2 and shall be paid within fifteen (15) business days post reception of such calculations."[40]

14.    Plaintiff Seller sent several emails and messages and attended meetings requesting access to the books and records, all of which were ignored.[41]  On February 17, 2023, Plaintiff Seller formally requested access to the books and records of Buyer in writing.[42]  In response to the formal

---

[38] *See* **Exhibit 4, APPX 157-158,** Razor Ownership Email (RAZOR-KBK-2163-2164).

[39] *See* **Exhibit 1, APPX 28**, the APA at § 5.02.

[40] *See* **Exhibit 1, APPX 013**, the APA at § 2.04.

[41] *See* **Exhibit 6, APPX 180**, the Price Decl. at ¶ 8.

[42] *See* **Exhibit 7, APPX 197-199,** the Demand Letter dated February 17, 2023, Amended Complaint [ECF 21], Exhibit N.

demand and request, Defendants asserted that they were "working to provide Seller and the Founders with access to books and records for Seller to review and confirm the calculation of the Year 1 Incremental EBITDA and Earn-Out Payments."[43] Defendants refused Plaintiff Seller access to the books and records prior to the filing of this lawsuit.[44] Defendants continue to deny access to the books and records.[45]

**E.      Breach of the Deadline to Provide Earn-Out Calculations and Earn Out Payments**.

15.     Section 2.04 of the APA specifies the three types of payments that comprised the Consideration that was to be paid to Plaintiff Seller, the most important component of which was the Earn-Out Payment due to Seller.[46] Pursuant to Section 2.04 of the APA, the Buyer is required to deliver to Seller the calculations of the Earn-Out Payment in November 2022, November 2023, and November 2024 (the "Earn-Out Calculations").[47] Appendix 2 of the APA provides how the Earn-Out Payment is to be calculated, which specifically requires the disclosure of the gross revenue for each year.[48]

**F.      Breach of Failing to Pay any Earn Out Due.**

*1.      Year 1 EOC and Earn Out Payment ("EOP").*

---

[43]*See* **Exhibit 8, APPX 200-201,** the Response Letter, Amended Complaint [ECF 21] Exhibit O.

[44]*See* **Exhibit 6, APPX 180,** the Price Decl. at ¶ 8.

[45]*See* **Exhibit 6, APPX 180,** the Price Decl. at ¶ 8.

[46]*See* **Exhibit 1, APPX 013,** the APA at § 2.04, p. 13.

[47]*See* **Exhibit 1, APPX 013,** the APA at § 2.04, p. 13; *see also* **Exhibit 9, APPX 213-214,** the Tran. Depo. at 44:20-45:16.

[48]*See* **Exhibit 1, APPX 102-135,** the APA at Appendix 2.

16.    Defendants did not deliver the Earn-Out Calculations for Year 1 of the APA until January 27, 2023 (the "January 2023 Year 1 EOC").[49]  The January 2023 Year 1 EOC did not include the Gross Revenue as required by the APA, but rather only Net Revenue; moreover, it relied upon an acronym designated as "SDE" for calculating net revenue, and not the methods required by the APA. It also did not include the certifications of financial statements as required.[50]

17.    In spite of their failure to adhere to the required revenue reporting and calculations of the APA, Defendants did include the EBITDA threshold amount of $935,978, which reflected the parties' negotiated agreements.[51]  In the email to which the January 2023 Year 1 EOC was attached, Defendants asserted that the "Other Operating Expenses," "particularly the high 3PL costs" were being investigated, and further stated that the numbers were preliminary only as to certain fees, and Defendants did not represent that the Net Revenue was incorrect.[52]

18.    Applying the deductions from gross revenue reflected in the Underlying Documents to the Net Revenue from November, 2021, through October, 2022, provided by Defendants on the January 2023 Year 1 EOC, the purported Net Revenue was $4,354,011.57 for Year 1.[53]  Notably,

---

[49]*See* **Exhibit 6, APPX 180**, the Price Decl at ¶ 7; *see also* ECF 47 at pp. 16-17, ¶¶ 79 and 81; *see* **Exhibit 8, APPX 201**, the Tran Depo. at 46:1-7;  *see* **Exhibit 10 and 10-1, APPX272-290**, the January 2023 Year 1 EOC; *see* [ECF 47] at p. 16, ¶¶ 79 and 81

[50]*see* **Exhibit 10 and 10-1, APPX288-292**, the January 2023 Year 1 EOC.

[51]*Compare* **Exhibit 10 and 10-1, APPX 288-292** the January 2023 Year 1 EOC *with* **Exhibit 10,  APPX 272-289,** Exhibit L of the Amended Complaint Email (see reference to $935,978 as new threshold).

[52]*See* **Exhibit 10, APPX 288-292**, the Year 1 EOC, *see also* Exhibit L of the Amended Complaint; *see also* ECF 47 at ¶81; see Exhibit 9, APPX 218, the Tran Depo. at 64:15-22.

[53]*See* **Exhibit 10 and 10-1, APPX 288-292**, the January 2023 Year 1 EOC.

such amount did not include any revenue from the Revenue Sharing Agreements.[54]  One of the asset-level income monthly reporting packages sent by Defendant Factory 14 S.a.r.l. to VPC on January 31, 2022 (the "January 2022 VPC Reporting Package") contains a TPS Portfolio FinSummary Tab which states the following revenue from the Kettlebell Kings brand for November, 2021 through January, 2022:[55]

> November 2021:     €343,405 ($405,217.90);
> December 2021:     €396,815 ($468,241.70); and,
> January 2022:      €320,909 ($378,672.62).[56]

19.    Additionally, Defendant Razor reported to VPC that the gross revenue for the Kettlebell Kings Brand for Year 1 of the APA totaled $5,199,616.00 or £6,551,516.16.[57] Conveniently, neither the January 2023 Year 1 EOC nor the purported revised Year 1 EOC contained within the July 2024 Memo of Year 1 and 2 EOC reflect gross income for Kettlebell Kings/Factory 14 VII. Clearly, had the gross revenue been included, the Earn Out Payment for Year 1 would have been due to Plaintiff Seller.[58]

### 2.    Year 2 EOC and Earn Out Payment ("EOP").

20.    Pursuant to the APA, the Year 2 EOC was due to Plaintiff Seller in November,

---

[54] *See* ECF 48 at ¶42 and Section III.B of this Motion, *supra.*

[55] *See* **Exhibit 5, APPX 170-171** F14 Jan. 2022 Reporting Package to VPC.

[56] *See* **Exhibit 11 and 11-1, APPX 293 and 300**, the VPC Reporting Package Email with Spreadsheet; *see* **Exhibit 10 and 10-1, APPX 288 and 290.** VPC 375; *see* **Exhibit 5, APPX 169-176**, the F14 Jan. 2022 VPC Reporting Package (VPC 375). It must be noted that the Reporting Packages list the KBK Brand as Factory 14 VII.

[57] *See* **Exhibit 11-1, APPX 300**, the Razor Jan. 2024 VPC Reporting Package Spreadsheet.

[58] *See* **Exhibit 10 and 10-1, APPX 288-292**, the January 2023 Year 1 EOC; *see* **Exhibit 12-1, APPX 307**, the July 2024 Memo of Year 1 and Year 2 EOC.

2023.[59]  Defendants admit that they did not provide the Year 2 EOC to Plaintiffs in November,

2023.[60]  Defendant Razor reported to VPC that the gross revenue for the Kettlebell Kings Brand

for Year 2 of the APA totaled $3,534,856.00 or £4,347,872.88.[61]  In an exhibit to the Expert

Report provided this litigation, Defendants created a purported Year 2 EOC, along with a purported

revised Year 1 EOC (the "July 2024 Memo of Year 1 and 2 EOC").[62]  The July 2024 Memo of Year

1 and 2 EOC did not include the gross revenue, as required by the APA, nor the required financial

statements and certifications.[63]  Michelle Tran testified in her deposition that she was not certain

whether the gross revenue was included in the underlying documents from which the July 2024

Memo of Year 1 and 2 EOC were calculated.[64]  Once again, had the gross revenue as reported to

VPC been included, clearly the Earn Out Payment for Year 1 and Year 2 would have been due to

Plaintiff Seller.

### 3.    Year 3 EOC and Earn Out Payment ("EOP").

21.    Pursuant to the APA, the Year 3 EOC was due to Plaintiffs in November, 2024.[65]

Defendants admit that the Year 3 EOC has not been prepared to date nor provided to Plaintiff

---

[59] *See* **Exhibit 1, APPX 013**, the APA at § 2.04; *see* **Exhibit 9, APPX 214,** the Tran Depo. at 46:1-14.

[60] *See* ECF 47 at p. 18,¶85; *see also,* [ECF 48] at p. 18, ¶85; *see* **Exhibit 9, APPX 214,** the Tran Depo. at 46:1-14.

[61] *See* **Exhibit 11-1, APPX 300**, the Razor Jan. 2024 VPC Reporting Package.

[62] *See* **Exhibit 12-1, APPX 307**, the July 2024 Memo of Year 1 and 2 EOC.

[63] *See* **Exhibit 12-1, APPX 307**, the July 2024 Memo of Year 1 and 2 EOC.

[64] *See* **Exhibit 9**, **APPX 227,** the Tran Depo. at 99:20-100:8.

[65] *See* **Exhibit 1, APPX 013**, APPX, the APA at § 2.04, pp. 13.

Seller.[66]  Defendant Razor reported to VPC that the gross revenue for the Kettlebell Kings Brand

for Year 3, from November 1, 2023 through January 2024, totaled $1,078,828.08.[67]

**G.    Attorney's Fees and Costs as Losses.**

22.    Plaintiff Seller has been forced to retain counsel to enforce and protect its rights, and

therefore has incurred attorney's fees and costs. [68]  Plaintiff Seller seeks to recover not only the

amounts due for the Earn Out Payments as damages, but applicable pre- and post-judgment interest

and all attorney's fees, costs, and expenses incurred in enforcing and protecting its rights under the

APA.[69]

**H.    Conditions Precedent.**

23.    All conditions precedent have been met.[70]

---

[66]*See* Response to Motion to Compel [ECF 67], at p. 8, fn. 20; *see also,* **Exhibit 9, APPX 214**, the Tran Depo. at 47:3-24.

[67]*See* **Exhibit 11-1, APPX 300**, the Razor Jan. 2024 VPC Reporting Package.

[68]*See* **Exhibit 6, APPX 181**, the Price Decl. at ¶9; *see also* ECF 47 at ¶158 and ECF 48 at ¶159.

[69]*See* **Exhibit 6, APPX 181**, the Price Decl. at ¶9; *see also* ECF 47 at ¶158 and ECF 48 at ¶159.

[70]Plaintiff pleaded that all conditions precedent have been met and no specific denials of such conditions precedent have been made. *Compare* the Complaint at para 90 *with* the Original Answers filed by Defendants at para. 90, that fails to specifically identify any specific condition precedent that was not met.  Therefore, the applicable presumption is in effect. *EEOC v. Service Terms, Inc.*, Civil Action No. 3:08-CV-1552-D (N.D. Tex. Apr. 22, 2010) ("When a party fails to specify in its operative pleadings (typically an answer to a complaint) the particular condition precedent that has not been fulfilled, it can be precluded from taking that position during litigation.  '[P]rovided the complaint includes a general averment that all conditions precedent to suit or recovery have been met, and the defendant does not deny the satisfaction of the preconditions specifically and with particularity...the defendant cannot later assert that a condition precedent has not been met.'") (quoting *Walton v. Nalco Chem. Co.*, 272 F. 3d 13, 21

---

# IV.  ARGUMENT

## A.    Defendants Breached their Agreement with Plaintiff Seller.

24.    To prevail on a breach of contract claim via summary judgment, Plaintiffs need only establish as a matter of law: (1) the existence of a valid contract; (2) its performance, tendered performance or excused performance; (3) that Plaintiffs breached the contract; and (4) damages were incurred by Plaintiffs as a result of Defendants breaches.[71]

### 1.    *The APA is a Valid Contract.*

25.    There is no dispute that the APA is a valid and enforceable contract between the Plaintiff Seller and Defendant Factory 14 VII, as they are the named parties to the APA.[72]   In addition, there was a subsequent amendment of the APA to allow for Factory 14 VII to become a party to the APA.[73]  In at least one letter, Defendant Razor represented that it was undertaking all contractual obligations of the Factory 14 Entities.[74]  Defendants judicially admit that the APA is a valid contract.[75]  Further, Defendants also admit that Exhibit C of the Complaint is a true and

---

(1st Cir. 2001) (internal quotation marks omitted); *Am. Bankers Ins. Co. Of Fla. v. Irricon*, 200 F. 3d 814, at *1 (5th Cir. 1999) (per curiam) (unpublished opinion).

[71]*Windhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 838 (Tex.App.–Dallas 2014, no pet.); *Hackberry Creek Club, Inc. v. Hackberry Homeowner's Ass'n*, 205 S.W.3d 46, 55 (Tex.App.–Dallas 2006, pet. denied).  Plaintiffs have reserved the issue of the amount of damages for trial.

[72]*See* the Motion at ¶5, *supra*.

[73]*See* the Motion at ¶5, *supra*; *see* **Exhibit 2, APPX 149-150**, the APA Amendments.

[74]*See* **Exhibit 3, APPX 153**, the Razor Letter.

[75]*See* ECF 47 at ¶132; *see also* ECF 48 at ¶132.

---

correct copy of the APA.[76]

26.      In addition, for purposes of calculating an Earn-Out under the APA, a "Buyer" includes one who acquires all or substantially all of the business or assets of "the business."[77] Defendant Razor has represented that it has undertaken all of the contractual obligations of the Factory 14 entities, and further told third parties that it was the owner of Kettlebell Kings.[78]

### 2.      *Plaintiffs Performed their Obligations Until Performance was Excused.*

27.      Plaintiffs performed all conditions precedent.[79] Defendants have admitted that Plaintiffs performed the covenants and obligations required under the APA and Consulting Agreements.[80]   Accordingly, there is no genuine issue of material fact on this element of the breach of contract claims.

### 3.      *Defendants Breached a Litany of Provisions of the APA.*

#### a.      **Breach of Requirement to  Provide Access to Books and Records.**

28.      Even though section 2.04 and 5.02 expressly require access to the books and records and the provision of financial statements and certifications along with Earn-Out Calculations, no such financial statements were provided by the required dates under the APA.[81]   Plaintiff Seller

---

[76]*See* ECF 47 at ¶25; *see also* ECF 48 at ¶25.

[77]*See* **Exhibit 3, APPX 153,** the Razor Letter.

[78]*See* **Exhibit 3, APPX 153**, the Razor Letter; *see* **Exhibit 4, APPX 157-158**, the Razor Ownership Email; *see* **Exhibit 16, APPX 404-507**, the Stock Transfer Agreement.

[79]*See* the Motion at ¶23, fn. 69 *supra*.

[80]*See* the Motion at ¶23, fn. 69 *supra*.

[81]*See* **Exhibit 1, APPX 012-013**, the APA § 2.04, at pp. 12-13.

made several requests to Buyer to access the books and records, including by letter of February 17, 2023, and Defendant Factory 14 VII and Defendant Razor refused to provide the requested access.[82]

> **b.    Year 1 and Year 2 EOCs were Untimely and Year 3 Is Not Prepared.**

29.    Pursuant to the APA, the Buyer was to provide Earn Out Calculations by November of 2022, 2023 and 2024.[83]  In conjunction with the Earn Out Calculations, the underlying financial statements were to be provided, along with the required certifications.[84]  The Year 3 Earn Out Calculations have yet to be prepared, let alone provided to Plaintiff Seller.[85]  It is undisputed that the Earn Out Calculations due under the APA were not provided timely for any of the required years.

> **c.    The EOC's Provided do not Comply with the APA.**

30.    One of the specific line items required to be included in the Earn Out Calculations under the APA is the gross revenue.[86]  Not only did Defendants fail to provide the Earn Out

---

[82]*See* **Exhibit 6, APPX 180**, the Price Decl. at ¶8.

[83]*See* **Exhibit 1, APPX 027-028,** the APA § 5.02, at pp. 27-28; s**ee Exhibit 1, APPX 012-013,** the APA at § 2.04; *see* **Exhibit 9, APPX 213-214,** the Tran Depo. at 44:20-45-16 and 46:1-46:7; *see* ECF 47 at p. 18,¶85; *see also,* [ECF 48] at p. 18, ¶85.

[84]*See* **Exhibit 1, APPX 012-013**, the APA at § 2.04, pp. 12-13; *see* **Exhibit 9, APPX 213-214,** the Tran Depo. at 44:20-45:16 and 46:1-46:7

[85]*See* Response to Motion to Compel [ECF 67], at p. 8, fn. 20; *see also,* **Exhibit 9, APPX 214**, the Tran Depo. at 47:3-24.

[86]*See* **Exhibit 1, APPX 013**, the APA at § 2.04 and Appendix 2, Exhibit 3a.

---

Calculations for Year 1 until January 2023,[87] but such calculations did not include the gross revenue number.[88]  Additionally, the July 2024 Memo of Year 1 and 2 EOC, produced as an exhibit to Defendants' Expert Report in this litigation, lacks a gross revenue number.[89]

31.    Moreover, the revenues did not include income from the Revenue Sharing Agreements with the non-Kettlebell Kings products and brands sold on the KBK Website/KBK Marketplace, which were required to be included.  Indeed, Defendants admit that the gross revenue includes only the revenue from non-KBK Products.[90]  This egregious failure to include all income in calculating the EOCs is a breach of the APA.

### d.    An Earn Out Payment is Due but has Not Been Paid.

32.    The only disclosure of gross revenue for Factory 14 VII during the applicable periods are included in the Reporting Packages prepared by Defendants and sent to VPC.[91]  Specifically, for Year 1 of the APA, the gross revenue reported to VPC for the Kettlebell Kings brand (or Factory 14 VII), and thus the only reported starting point of the Earn Out Calculation, was $5,199,616.00 or £6,551,516.16.[92]  Accepting as true the deductions from the gross revenue contained in the July 2024 Memo of Year 1 and Year 2 EOC to arrive at Net Revenue, as

---

[87] *See* [ECF 47] at p. 16, ¶¶ 79 and 81; *see also* **Exhibit 10 and10-1, APPX 288-292**, the January 2023 Year 1 EOC.

[88] *See* **Exhibit 10 and 10-1**, **APPX 288-292**, January 2023 Year 1 EOC.

[89] *See* **Exhibit 12-1, APPX 307,** July 2024 Year 1 and Year 2 EOC.

[90] *See*, **Exhibit 9, APPX 214**, the Tran Depo. at 79:14-80:18.

[91] *See* **Exhibit 5, APPX 169-171,** the F14 Jan. 2022 VPC Reporting Package; *see also* **Exhibits 11 and 11-1**, **APPX 293 and 300,** the Razor Jan. 2024 VPC Reporting Package and Email.

[92] *See* **Exhibit 11-1, APPX 300**, the VPC Reporting Package Email with Spreadsheet.  (VPC 372, 418)

represented by Defendants in the Underlying Documents for Year 1, such deductions from gross revenue total $217,638.71, no where near the $1,628,198.19 deducted by Defendants in the January 2023 Year 1 EOC or the July 2024 Memo of Year 1 and Year 2 EOC.[93]  Taking as true the deductions contained in the Underlying Documents, and the reported VPC Gross Revenue the Net Revenue is *at least* $6,333,877.45 for Year 1, and $4,146,616.14 for Year 2, and an Earn Out Payment is due for both years if all other expenses deducted from the gross revenue in the July 2024 Memo of Year 1 and Year 2 are taken as true.[94]

33.    Moreover, the gross revenue from the non-Kettlebell Kings products owned by Defendant Razor and sold on the KBK Website for Year 1, Year 2, and part of Year 3 under the APA is revealed in the VPC Reporting Package.[95]  Thus, for example, merely adding the 15% of TribeWOD's gross revenue derived from the KBK Website (which is the agreement referenced in the emails) triggers an Earn Out Payment for Year 1 and Year 2, even under the July 2024 EOC Memo for Year 1 and Year 2 EOC.  Adding the 15% of the gross revenue of the other non-Kettlebell Kings products sold on the KBK Website only further increases the Earn Out Payment due for Year and Year 2. Clearly an Earn Out Payment is due based upon these simple additions omitted income.

---

[93] *See* **Exhibit 13, APPX 308, 310-313,** the Underlying Documents for July 2024 Year 1 EOC; *see also* **Exhibit 14, APPX 317, 319-322,** the Underlying Documents for July 2024 Year 2 EOC; *see* **Exhibit 12-1, APPX 307,** July 2024 Year 1 and Year 2 EOC.

[94] *See* **Exhibit 13, APPX 308, 310-313,** the Underlying Documents for July 2024 Year 1 EOC; *see also* **Exhibit 14, APPX 317, 319-322,** the Underlying Documents for July 2024 Year 2 EOC; *see* **Exhibit 12-1, APPX 307,** July 2024 Year 1 and Year 2 EOC.

[95] *See* **Exhibits 11 and 11-1**, **APPX 293 and 300,** the Razor Jan. 2024 VPC Reporting Package and Email.

34.    Although several fact issues exist as to which additional amounts can be included in gross revenue; the amount of expenses deducted from gross revenue and net revenue; how such expenses are attributed; a retroactive transfer pricing structure; the effect of failing to order inventory; damages to the brand; customer service impacts; shutting down revenue streams and markets; and others, such fact issues serve only to increase the amount of the Earn Out Payments, and will be adduced at trial. Nonetheless, it is without question that an Earn Out Payment is due for Years 1 and 2 of the APA and will also likely be due for Year 3 of the APA.

### 4.    *Defendants' Breaches Damaged Plaintiffs.*

35.    Due to Defendants' breaches of the APA, the Plaintiffs were damaged. The failure to allow access to books, records and financial statements, and the failure to provide the Earn Out Calculations in a timely manner delayed Plaintiff Seller from ascertaining the ongoing financial performance of the business and hampered their performance of their duties under the Consulting Agreements.[96]  Furthermore, the inaccuracy of the Earn Out Calculations as provided to Plaintiffs, notably the lack of any gross revenue, especially when compared to the gross revenue reported to VPC, supports an Earn Out Payment due each and every year of the APA, which has yet to be paid.[97]  Not surprisingly given Defendants' subterfuge, such Earn-Out Payments will increase dramatically when the expected revenue streams and costs savings provided by Plaintiffs are applied. Any remaining fact issues relate only to the increased amount of the Earn Out Payments due to

---

[96]*See* **Exhibit 6, APPX 180-181**, the Price Decl. at ¶¶7-9.

[97]*Compare* **Exhibits 5, 10 and 11.**

Plaintiff Seller, not whether an Earn Out Payment is due. Plaintiff Seller has clearly established that an Earn Out Payment is due to for the purpose of establishing the element of damages as a matter of law.

### 5.    Plaintiff Seller is Entitled to Recover Attorney's Fees and Costs.

52.    Pursuant to *Texas Civil Practices & Remedies Code* §38.001, *et seq.*, Plaintiffs are entitled to recover their attorney's fees and costs incurred due to the breach of contract.[98] Further, under Section 7.03 of the APA, Plaintiffs are entitled to recover "Losses," which expressly includes attorney's fees and costs.[99] Plaintiffs sent notice letters prior to the filing of suit notifying Defendants of its intent to obtain attorney's fees and costs.[100] Plaintiffs intend to reserve the amount of attorney's fees and costs to be decided along with the issue of damages or through a subsequent Motion for Costs and Fees.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Seller respectfully requests that the Motion be, in all things, GRANTED, and, for such other and further relief at law or in equity to which the Plaintiff Seller may show itself justly entitled.

---

[98] Tex. Civ. Prac. & Rem. Code §38.001, *et seq.*

[99] *See* **Exhibit 1, APPX 006-007 and 032**, the APA at §§ 7.03 at p. 32 and 1.02, Definitions at p. 6-7.

[100] *See* **Exhibit 7, APPX 197-199**, the Demand Letter.

Respectfully submitted,

SHEILS WINNUBST, PC

By: */s/ Latrice E. Andrews*
   Mark D. Winnubst
   State Bar No. 21781200
   Latrice E. Andrews
   State Bar No. 24063984

1100 Atrium II
1701 N. Collins Boulevard
Richardson, Texas 75080
Telephone: 972-644-8181
Facsimile:  972-644-8180
Email: mark@sheilswinnubst.com
E-mail: latrice@sheilswinnubst.com

ATTORNEYS FOR PLAINTIFF SELLER

## CERTIFICATE OF SERVICE

On the 30th day of June, 2025, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served all counsel and parties of record electronically or by another means authorized through Federal Rule of Civil Procedure 5(b)(2) and the Local Rules.

   */s/ Latrice E. Andrews*
   Latrice E. Andrews